**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-1376
_____

CRAIG SZEMPLE,
                    Appellant

v.

UNIVERSITY OF MEDICINE & DENTISTRY OF NEW JERSEY; UNIVERSITY
CORRECTIONAL HEALTH CARE; ART BREWER, M.D.; Y. SOLIMAN, M.D.; J.
DICKETT; M. CONRAD; DR. GETZOFF, DMD, ORAL SURGEON; DR. ABU
ASHAN, DIRECTOR; DR. MANN, STAFF DENTIST; DR. WU, REGIONAL
MEDICAL DIRECTOR; DONIQUE IVERY, NURSE PRACTITIONER DOCTORS
ASSISTANT; DR. LEE, DMD; SHARON DOE, DENTAL ASSISTANT NEW JERSEY
DEPARTMENT OF CORRECTIONS; GEORGE HAYMAN, COMMISSIONER, N.J.
DEPT. OF CORRECTIONS; RICHARD CEVASCO, PH.D.; THOMAS FARRELL;
MICHELLE RICCI, ADMINISTRATOR N.J.S.P.; WILLIAM MOLEINS, ASSOCIATE
ADMINISTRATOR; JIM DRUMM; JAMES BARNES; CHRIS HOLMES,
ASSISTANT SUPERINTENDENT; JAMES KEIL, CUSTODY CHIEF; SGT. BUNDY;
SCO MCRAE; SCO SPIEWAK; SCO ALBANO; SCO WILSON; SCO MCHALE; SCO
M. ZUKOWSKI; LT. SANDERSON; SGT. PERITTI; SANDOZ INC.; JOHN/JANE
DOES (FICTITIOUS NAMES, REAL NAMES UNKNOWN)
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.N.J. Civil Action No. 10-cv-00258)
District Judge:  Honorable Dennis Cavanaugh
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
November 14, 2011
Before:  SLOVITER, SMITH AND GREENBERG, Circuit Judges

(Opinion filed: November 16, 2011)
_____

OPINION
_____

PER CURIAM

Craig Szemple, a New Jersey state prisoner proceeding pro se, appeals an order of the United States District Court for the District of New Jersey dismissing his civil rights action. For the reasons that follow, we will vacate the order of the District Court and remand for further proceedings.

Szemple claimed violations of the Eighth Amendment and state law in connection with dental and medical care he received in prison. The District Court screened Szemple's complaint pursuant to 28 U.S.C. § 1915A and determined that he failed to allege facts supporting an Eighth Amendment violation. The District Court dismissed the complaint without prejudice to Szemple filing a motion to reopen with an amended complaint curing the deficiencies in his original complaint. Szemple filed an amended complaint but the District Court decided that he had not alleged facts showing the requisite deliberate indifference for a constitutional violation. The District Court denied Szemple's motion to reopen and amend his complaint and this appeal followed.

We have jurisdiction pursuant to 28 U.S.C. § 1291. Our standard of review is plenary. Allah v. Seiverling, 229 F.3d 220, 223 (3d Cir. 2000) (per curiam). To survive dismissal, Szemple's complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662,

2

129 S. Ct. 1937, 1949 (2009) (quoting <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 554, 570 (2007)).

Szemple alleged in his amended complaint that he was seen by Dr. Lee, the Dental Director for the New Jersey Department of Corrections, for a toothache. Dr. Lee determined that a tooth had to be extracted and that the best course was to send him to the University of Medicine and Dentistry to be placed under light sedation because Szemple suffered from a heart condition. Szemple, however, was allegedly denied treatment at the University and denied sedation. Instead, on September 15, 2009, Dr. Getzoff extracted Szemple's tooth in the prison medical clinic using only Novocain.

As alleged in detail in Szemple's amended complaint, there were serious complications. Szemple's mouth began bleeding early in the procedure before the tooth was extracted, requiring constant suction. After 20 minutes and no success in extracting the tooth or stopping the "profuse" bleeding, Dr. Getzoff and his assistant Sharon took a break. Dr. Mann was called in to look at Szemple's mouth, but did not ascertain the source of the bleeding. Dr. Getzoff and Sharon returned from their break and resumed trying to extract the tooth, which Szemple described as "torture." Szemple states that Dr. Getzoff broke the filling of the tooth in front of the tooth to be extracted, severed nerves, and cut a major blood vessel under his tongue. Szemple alleged that the pain and anxiety caused his heart rate to increase, chest pains, and shortness of breath. He states that his groans and pleas were ignored and that he could hear others coming to the door to find out the source of the cries. Szemple averred that Getzoff and Sharon "ignored the

3

recommended treatment, ignored [his] previously diagnosed conditions, and ignored proper procedures to prevent further injury." Am. Compl. at 8.

After the tooth was extracted, Dr. Getzoff and Sharon allegedly told Szemple that he would experience severe pain when the anesthetic wore off and prescribed him Tylenol. Getzoff put gauze in Szemple's mouth, gave him two additional gauze pads, and discharged him. Szemple alleges that Dr. Getzoff and Sharon were aware that he was still bleeding when he was discharged.

Szemple avers that he had to pass through at least seven checkpoints to return to his housing unit but not one correctional officer stopped him to ask about the blood dripping from his mouth or on his shirt. Sergeant Bundy and another officer, who had apparently noticed blood on the floor, went to Szemple's cell and asked him who had been stabbed. Szemple explained that he had a dental procedure. Szemple's cellmate, Robert Percey, stated he did not think a person should bleed so badly from a dental procedure. The officers left and Szemple laid down to try to reduce his heart rate. Percey called for the unit officers when he saw blood on Szemple's pillow. Officers Wilson and Spiewak authorized Szemple to return to the clinic. Szemple brought a towel to catch the blood. When he reached the clinic, Correctional Officer McCray did not call for a medical provider, but gave Szemple gauze and told him to return to his unit.

After he returned, Percey again called officers because Szemple was sweating and pale. Sergeant Bundy sent Szemple to the clinic again with a cup to spit his blood. The Clinic Medical Director, Dr. Abu Ashan, got Szemple a bigger container for the blood

4

and more gauze pads. Szemple avers that Dr. Ashan was aware of his use of heart medication, and the danger of excessive bleeding, yet he did nothing to discover the source of the bleeding. A nurse, however, was ordered to call an ambulance.

Szemple was taken to St. Francis Medical Center. He believes Dr. Getzoff provided misinformation about the cause of the bleeding to the hospital and that, as a result, the doctor was unable to stop it. Szemple states he got up to go to the bathroom, had severe chest pains, fell, and became unresponsive. Hospital staff rushed him to the emergency room, where a doctor discovered that he had a lacerated artery under his tongue. Szemple required blood transfusions and was ultimately stabilized. Doctors wrote several orders for Szemple's follow-up care.

Szemple avers that when he returned to prison "[o]ver the next ten days, [he] received none of the treatments ordered by the doctors at St. Francis," Am. Compl. at 16, and his digestive system broke down. On September 25, 2009, Szemple was unable to get up. Percey called for help and a unit officer called an emergency medical "Code 53," requiring staff to bring emergency equipment to his cell. Szemple was rushed to the clinic on a gurney. A sergeant suggested they call 911 because Szemple "looked like he was dead." Am. Compl. at 17. At the clinic, an attending nurse hooked him up to an electrocardiogram, said he was fine, and moved him to the infirmary. Szemple asked to go to the emergency room, but he states he was not properly examined, the staff was indifferent to his pleas, and he was placed in an infirmary cell and left unattended. Shortly thereafter, Szemple tried to use the bathroom but he passed out. He woke up in a

5

pool of blood. A nurse was called and it was discovered that Szemple had hit his head and gashed his forehead.

Szemple was taken to St. Francis Medical Center's emergency room. Blood transfusions were ordered. Szemple heard a doctor tell the escorting officers that, if he had not fallen, he would have bled to death in his sleep. Szemple spent more than four days in the intensive care unit and the doctors allegedly concluded that his internal bleeding was caused by the stress he incurred from the tooth extraction. Szemple further alleges that Dr. Ashan prescribed the wrong dosage of a medication, which caused his fall on September 25.

Szemple states that he returned to prison on September 30, 2009, and that he asked for, but did not receive, treatment for neurological damage caused by the tooth extraction or his head injury. Szemple states he suffers from headaches, blurred vision, and dizziness but the defendants refuse to follow the treatment prescribed by the doctors at St. Francis. Szemple further states that on October 1, 2009, he was placed in the Management Control Unit ("MCU"), which is generally reserved for the most dangerous inmates. Szemple states he was not charged with an offense, but he was left in isolation for 60 days, without property or phone or visiting privileges. Szemple believes he was placed in the MCU so that he would be deterred from filing a lawsuit. Szemple states that while in the MCU he learned that he had been written up for bleeding on the floor after the tooth extraction, but the charges were covered up once the serious nature of his condition was discovered.

6

The Eighth Amendment proscribes deliberate indifference to the serious medical needs of prisoners. Estelle v. Gamble, 429 U.S. 97, 104 (1976). Allegations of medical malpractice or mere disagreement as to proper medical treatment are insufficient to establish a constitutional violation. Spruill v. Gillis, 372 F.3d 218, 235 (3d Cir. 2004). Deliberate indifference may be established where a prisoner is prevented from receiving needed or recommended medical treatment. Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999). Deliberate indifference also may be shown by "persistent conduct in the face of resultant pain and risk of permanent injury." White v. Napoleon, 897 F.2d 103, 109 (3d Cir. 1990).

Although the District Court concluded that, at most, Szemple may have pleaded a case of medical malpractice, there are factual allegations in the amended complaint that support a plausible claim of deliberate indifference to Szemple's medical needs. Szemple alleges that Department of Corrections Dental Director Lee determined that he should have his tooth extracted at the University of Medicine and Dentistry so that he could be sedated due to his heart condition and that this recommended course of treatment was denied. Dr. Getzoff allegedly knew about Szemple's heart condition, yet he performed the procedure without sedation, causing his heart rate to increase, chest pains, and shortness of breath. In addition, Szemple complains of profuse bleeding during the tooth extraction and pain he described as "torture," but he avers that Dr. Getzoff and his assistant ignored his pleas and persisted in their actions. Dr. Getzoff also allegedly discharged him with knowledge that he was still bleeding.

7

When Szemple returned to his cell, corrections officers allegedly saw him bleeding but did nothing until his cellmate called for help. When he returned to the medical clinic, Szemple states Corrections Officer McCray ordered him back to his cell. Szemple's cellmate had to call for help again before Szemple was taken to the hospital. When Szemple was discharged from the hospital, he claims he received none of the treatment ordered by the doctors at St. Francis. Ten days after the tooth extraction, when Szemple could not get up, he was rushed to the clinic but the attending nurse allegedly moved him to the infirmary and left him unattended. As a result, Szemple fell, gashed his head, and he was taken to the emergency room. Szemple states that after he was discharged from the hospital the second time, he did not receive medical treatment and that the defendants again refused treatment prescribed by the St. Francis doctors. Although it is unclear at this stage whether Szemple will be able to prove his allegations, his amended complaint goes beyond a claim of mere negligence and is sufficient to survive screening under 28 U.S.C. § 1915A.[1]

Accordingly, we will vacate the order of the District Court and remand this matter for further proceedings.

_____

[1]Szemple also correctly asserts in his brief that the District Court did not address the state law claims contained in his amended complaint.